Stephen Montoya (#011791)
**Montoya, Lucero & Pastor, P.A.**
3200 North Central Avenue, Suite 2550
Phoenix, Arizona 85012
602-256-6718 (telephone)
602-256-6667 (fax)
stephen@montoyalawgroup.com

Attorney for Plaintiff

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Rhita Bercy,<br><br>Plaintiff,<br><br>vs.<br><br>City of Phoenix,<br><br>Defendant. | No.<br><br>**COMPLAINT**<br><br>(Jury Trial Demanded) |

For her Complaint against Defendant, Plaintiff alleges the following:

1. This is an action seeking to redress discrimination in the public workplace based on race, color and national origin brought by Ms. Rhita Bercy against her employer, the City of Phoenix, under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e (as amended), and the Civil Rights Act of 1866, 42 U.S.C. § 1981 (as amended).

2. This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331, 1343(4) and 42 U.S.C. § 2000e.

3. This Court has personal jurisdiction over the parties to this dispute because the misconduct alleged in this Complaint transpired in Phoenix, Arizona.

4. Venue is proper in this District under 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3).

5. Rhita Bercy is a citizen of the United States of America residing in Maricopa

County, Arizona.

6. Ms. Bercy is female in gender, African-American in race, black or brown in skin color and was born in the Republic of Haiti.

7. The City of Phoenix is a municipal corporation in Maricopa County, Arizona.

8. The City has been engaged in an industry affecting commerce and has had at least fifteen employees for each working day in at least twenty calendar weeks this year or last year at all times material to this Complaint and is thus subject to the requirements of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e.

9. Ms. Bercy was employed by the City of Phoenix at all times material to this Complaint.

10. Her work performance at the City was satisfactory to excellent at all times material to this Complaint.

11. During the course of her employment with the City, the City subjected Ms. Bercy to different terms and conditions of employment based on her race, her skin color and her national origin.

12. Specifically, another employee of the City, Ms. Alma Corrales, made a series of highly offensive discriminatory remarks to Ms. Bercy based on Ms. Bercy's race, color and national origin in the workplace when they both worked in the City's Housing Department.

13. For example, beginning in approximately 2017:

- Ms. Corrales stated that Ms. Bercy "is from a third-world country";

- When referring to Ms. Bercy, Ms. Corrales stated that "Black people like to use the Black card":

- Ms. Corrales repeatedly referred to Ms. Bercy as "the Black princess" and the "Haitian princess";

- When referring to Ms. Bercy, Ms. Corrales also stated that "Black people should go back to the plantation";

- When referring to Ms. Bercy, Ms. Corrales stated, "I guess some people cannot get anything right or maybe stupid is a Black thing";

- Ms. Corrales also refused to use the same restroom as Ms. Bercy because Ms. Bercy is Black and Ms. Corrales ignorantly claimed to believe that using the same toilet as Ms. Bercy would also make her butt black; and

- When referring to Ms. Bercy, Ms. Corrales stated, "nothing can be done by certain people because niggers always make a mess."

14. Ms. Corrales made these comments and many other similar insulting, discriminatory comments throughout the time she worked with Ms. Bercy in the City's Housing Department.

15. Ms. Corrales would also bully and disrespect Ms. Bercy in the workplace based on Ms. Bercy's color, race and national origin.

16. In November 2017, Ms. Bercy complained to her supervisor in the Housing Department about Ms. Corrales' discriminatory remarks, but Ms. Corrales continued to make the remarks.

17. In April 2018, Ms. Bercy complained about Ms. Corrales' discriminatory remarks once again to the same supervisor, but Ms. Corrales nevertheless continued to make the remarks.

18. Because Ms. Corrales continued to discriminatorily harass Ms. Bercy even after Ms. Bercy complained of the harassment at least twice to her supervisor, Ms. Bercy was forced to transfer to a potentially temporary position in August 2018 in the City's Human Services Department.

19. After Ms. Bercy was forced to transfer to the Human Services Department, Ms. Corrales harassed Ms. Bercy again when she came back to the Housing Department to retrieve her personal belongings.

20. Based on Ms. Corrales' protracted, unabated discriminatory harassment, in February 2019, Ms. Bercy complained to the City's Equal Opportunity Department ("EOD")

3

of Ms. Corrales' discriminatory misconduct. See attached Exhibit A.

21. When investigating Ms. Bercy's complaint, the EOD interviewed witnesses who corroborated her complaints and also stated that "the bullying, the harassing [of Ms. Bercy by Ms. Corrales] was ongoing and constant." See attached Exhibit B, p. 9.[1]

22. The EOD's investigation of Ms. Bercy's complaint also confirmed that Ms. Corrales stated that she did not want to use the same restroom as Ms. Bercy because Ms. Corrales believed that her "butt could get black" if she used the same toilet after Ms. Bercy used it. Id. at pp. 13-14.

23. The EOD's investigation also "substantiated" that Ms. Corrales told her coworkers "don't clean [the restroom], let the Black person clean." Id. at ¶ 4, pp. 14-15.

24. Based on its investigation of Ms. Bercy's complaint, the EOD concluded on February 20, 2020 that Ms. Corrales was guilty of making a series of derogatory comments to and regarding Ms. Bercy based on her color, race and national origin, thereby "creating a hostile work environment." Id. at pp. 19-22.

25. Although Ms. Bercy gave the City direct notice of Ms. Corrales' discriminatory harassment at least twice by complaining to her direct supervisor, the City also knew or should have known of the harassment because it was open and obvious to any reasonable observer.

26. After the City received notice of the discriminatory harassment summarized above, it failed to take prompt and effective corrective measures to stop the harassment and appropriately discipline Ms. Corrales and thereby ratified Ms. Corrales' misconduct.

27. In fact, instead of correcting the problem, the City actually promoted Ms. Corrales soon after Ms. Bercy filed her complaint with the EOD summarizing Ms. Corrales' bigoted remarks and conduct in the workplace.

28. The City has also failed to discipline other employees for using the "n-word" at

---

[1] The City provided Ms. Bercy with the attached highly redacted version of its investigation of her EOD complaint.

4

1  work.

29. The City's conduct as described above was intentional, protracted, malicious and deliberately indifferent to and in reckless disregard of Ms. Bercy' federally protected rights under Title VII and Section 1981.

30. The City's discriminatory treatment of Ms. Bercy undermined her otherwise excellent job performance and has caused her to lose work time and suffer lost wages and other income.

31. The City's discriminatory treatment of Ms. Bercy also caused her to suffer from anxiety and panic attacks and forced her to take medical leave to preserve her health.

32. Based upon the City's discriminatory misconduct, Ms. Bercy filed a Charge of Discrimination against the City of Phoenix with the United States Equal Employment Opportunity Commission ("EEOC") on March 14, 2019. See attached Exhibit C.

33. Ms. Bercy requested a Right to Sue letter from the United States Equal Employment Opportunity Commission and the Civil Rights Division of the United States Department of Justice and is filing this action within ninety days of her receipt of a Right to Sue letter from the Department of Justice. See attached Exhibit D.

34. Pursuant to Rule 38 (b) of Federal Rules of Civil Procedure, Ms. Bercy hereby demands a trial by jury.

**WHEREFORE**, Ms. Bercy respectfully requests the Court to:

    A.    Issue a judgment declaring that the conduct of Defendant as described above violated her rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, as amended, and the Civil Rights Act of 1866, 42 U.S.C. § 1981, as amended;

    B.    Issue preliminary and permanent injunctions against Defendant enjoining it from committing similar unlawful acts in the future;

    C.    Issue a judgment awarding her nominal, compensatory and punitive damages against Defendant in amounts to be determined by the

finder-of-fact at trial;

D. Issue a judgment awarding her reasonable costs and attorney fees against Defendant pursuant to 42 U.S.C. § 2000e and any other applicable law; and

E. Issue a judgment awarding her all other relief that is just and proper against Defendant under the circumstances.

Respectfully submitted this 6th day of October 2020.

**MONTOYA, LUCERO & PASTOR, P.A.**

/s/ Stephen Montoya
Stephen Montoya
3200 North Central Avenue, Suite 2550
Phoenix, Arizona 85012
Attorney for Plaintiff

I hereby certify that on October 6, 2020, I electronically transmitted the foregoing document to the Clerk of Court using the CM/ECF System for filing.

/s/ Stephen Montoya